**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DARRYL PETLOCK,** | **Civil Action No. 16-310(FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **BARRY NADROWSKI, WARDEN M.C.C.I., et al.,** | |
| **Defendants.** | |

## I.    INTRODUCTION

At the time he filed his Complaint, Plaintiff was confined as a pretrial detainee at Monmouth County Correctional Institution ("M.C.C.I."). This civil action raises Fourteenth Amendment challenges to Plaintiff's conditions of confinement in protective custody at M.C.C.I. and also alleges that the Defendants, through their promulgation and approval of various policies at M.C.C.I., have interfered with his Sixth Amendment right to the assistance of counsel in his pending criminal case, and have denied him equal protection of the law and access to the courts in his criminal case and other legal matters. (*See* ECF No. 2-4, Am. Compl. at pages 6, 7-31.) Federal law requires this Court to screen Plaintiff's Amended Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

The Court has screened the Complaint in this action for dismissal and has determined that dismissal of the entire Complaint is not warranted at this early stage. For the reasons explained in this Opinion, the Court will dismiss the access to the courts claims that do <u>not</u> relate to his

1

pending criminal case. The Court will also dismiss without prejudice Plaintiff's claims for injunctive relief and compensatory damages.[1]  Plaintiff's remaining claims, as construed by the Court in this Opinion, shall proceed against Defendants for nominal and punitive damages only.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a.  Facts Alleged in Plaintiff's Amended Complaint

According to his Amended Complaint, Plaintiff is a pretrial detainee and was held at M.C.C.I. in protective custody on murder charges for approximately three-and-a-half years. (ECF No. 2-4, Am. Complaint at page 5.)  The Defendants in the instant action are Barry Nadrowski, the Warden of M.C.C.I., and Shaun Golden, the Sheriff of Monmouth County Sheriff's Department ("Defendants"), which allegedly oversees M.C.C.I.  (*Id.* at Attachments B, C.)

### i.   Facts Related to Plaintiff's Conditions of Confinement in Protective Custody at M.C.C.I.

A number of the allegations in Plaintiff's Amended Complaint relate to the conditions of his confinement in protective custody at M.C.C.I.  (ECF No. 2-4, Am. Compl., Attachment E, at pages 1-2.)  Plaintiff first alleges that he was locked in a small cell for 23 hours a day, seven days a week, and was denied adequate exercise/recreation.  During the one hour a day that he was not locked in his cell, he was permitted to split the time between showering and exercise, both of which take place in "the Cage."  (*Id.* at 2.)  Nothing is permitted inside the Cage, which is the size of a small cell.  Plaintiff also alleges that he has not been permitted outside at all since his detention began, even though there were secure areas where he could exercise outside.  (*Id.* at 3.)  Plaintiff alleges that Defendants Nadrowski and Golden created and/or implemented the

---

[1]      As explained in this Opinion, the Court also denies without prejudice Plaintiff's separate motion for a preliminary injunction/restraining order.  (ECF No. 6.)

protective custody policies at M.C.C.I. and are also aware of his treatment because he has filed grievances and written letters to them.  (*Id.* at 2-3; Attachments C, D.)

In addition to the 23-hour per day lock down, Plaintiff also provides a laundry list of other alleged deficiencies in the condition of his confinement at M.C.C.I.  The Amended Complaint alleges that the cells in protective custody are under 24-hour illumination, which negatively affected Plaintiff's sleep and caused him physical and mental problems.  (*Id.* at 3-4.) His Amended Complaint further alleges that he was provided a pillow in protective custody. (*Id.*)  The temperature in the cells in protective custody was "frigid," like "a walk in refrigerator."  (*Id.*)  Prison officials claimed that the heat was broken in Plaintiff's cell, but an area near his cell was heated.  (*Id.*)  A television near Plaintiff's cell blasted at a maximum level from approximately 7 a.m. to 11 p.m.  (*Id.*)  Food served to protective custody inmates was left to sit for an hour in foam containers, and the failure to keep the food at proper temperatures caused a "serious health hazard by permitting the growth of bacteria."  (*Id.*)  The "clothing policy [in protective custody] is a one for one jump suit exchange."  (*Id.*)  Plaintiff further alleges that he was "denied access to all programs and services offered by M.C.C.I.," including education, rehabilitative, religious."  Finally, he alleges that for inmates in protective custody, visits from outside visitors were limited to a single 20-minute visit once a week between 1 p.m. and 3 p.m., which allegedly prevented most family and friends from visiting.[2]  (*Id.*)

---

[2]      Plaintiff's Amended Complaint includes a "legal claims" section, in which he summarizes the claims he seeks to bring under section 1983.  This list does not include any claims arising from these alleged deficiencies, and Plaintiff does not ask for any injunctive relief or damages with respect to these particular conditions of confinement.  Thus, it is not clear whether Plaintiff is attempting to raise separate claims related to some or all of these issues or if he simply provides this information for context.

ii.    **Defendants' Alleged Creation/Approval of Policies Denying Plaintiff Private Visits with his Attorney and Mandating Unreasonable Searches of his Cell and Person**

Plaintiff also alleges that after the indictment was returned against him on the murder and related charges, he sought to take educational courses, but his request was denied. After filing a grievance and appealing the matter to Defendant Nadrowski, a policy was issued that permitted Plaintiff to take two paralegal studies courses. After he received permission to take the courses, all of his personal property went missing, including his legal research, case notes, and prescription eye glasses. (*Id.* at 8.) Plaintiff was allegedly informed by unidentified individual(s) at M.C.C.I. that if he decided not to return to school, his eye glasses might be found. (*Id.*)

Plaintiff alleges that at the time he lost his property, a memorandum of policy was allegedly issued with the approval of both Defendants. This policy was allegedly created to target Plaintiff personally. "One part of the policy was that [Plaintiff] was no longer to be allowed to have a private visit with [his] attorney." (*Id.*) He received no hearing or notice before losing the right to have attorney visits. (*Id.*) Unidentified jail staff also allegedly informed him if he "discontinue[d] with school", he could have a private room to meet with his attorney. (*Id.*) The policy related to attorney visits is discussed in more detail below.

As the second part of the alleged policy, correctional officers were directed to search Plaintiff's cell every day, seven days a week. (*Id.* at 9.) In addition, the policy provided that Plaintiff was to be personally searched when he leaves his cell and upon his return even though he was under constant visual watch. (*Id.*) Plaintiff alleges that the searches were done to harass him. (*Id.*) After Plaintiff filed grievances and appeals of the grievances, unidentified

corrections officers allegedly mixed up thousands of pages of his legal materials and explained that he needed to "stop playing lawyer." [3]   (*Id.*)

### iii.      Plaintiff's Claims Regarding Access to his Attorney and the Courts

Plaintiff's Amended Complaint alleges that in order to make a legal phone call while in protective custody, inmates must make a written request to a social worker who then leaves a message for the attorney.  The legal phone call can only be set up during a time when the social worker is present and available.  Plaintiff alleges that this policy/procedure for making legal phone calls in protective custody normally leads to a two-week wait time and violates the prison regulations governing legal phone calls.  (*Id.* at 5.)  Plaintiff alleges that, for inmates in protective custody, all legal phone calls must be made from the "Restrictive Cage," which is a two by two foot cage that resembles a telephone booth.  The Restrictive Cage is in the main housing corridor, and is not private.  (*See Id.* at 6-7.)  Plaintiff alleges that the Defendants have approved the use of the Restrictive Cage for legal phone calls.  (*Id.* at 7.)

Plaintiff's Amended Complaint also alleges that M.C.C.I. restricted his access to the law library and prevented protective custody inmates like himself from receiving assistance from other general population inmates that are assigned to assist inmates with their legal matters. (ECF No. 2-4, Am. Compl. at 10.)   Plaintiff alleges that he received 15 hours of time in the law library from September 2014 to September 2015, and that general population inmates receive between 50-150 hours of time in the law library each year.  (*Id.* at page 11.)

---

[3] Plaintiff does not allege that Defendants Nadrowski or Golden instituted these policies to retaliate against Plaintiff for taking paralegal courses, which Nadrowski allegedly approved, and Plaintiff has not identified the individuals who took his personal property or allegedly retaliated against him for "playing lawyer" and filing grievances.  *Respondeat superior* is not a basis for § 1983 liability.  To the extent Plaintiff wishes to allege claims of retaliation under 42 U.S.C. § 1983 against these unidentified Defendants or against Defendants Nadrowski and/or Golden, he must do so by way of a Second Amended Complaint.

Plaintiff further alleges that when his wife filed for divorce in 2013, he did not receive adequate time in the law library, which he needed in order to understand his rights as a parent. He claims that when a hearing date was set in his divorce, Plaintiff checked with jail administration and was assured that the jail was aware of the hearing date and would bring him to court on that date. M.C.C.I. allegedly failed to bring him to court for the hearing, and the Judge granted the divorce and Plaintiff's ex-wife received complete custody over his children and sent them to live in Trinidad. (*Id.* at 10-11.)

Plaintiff also states that he filed two civil law suits in 2015. The first law suit was against his then-attorney of record in his pending criminal case. That attorney allegedly entered into a contract with Plaintiff outside of his representation in Plaintiff's criminal case. The attorney initially agreed to write four position letters for Plaintiff with respect to the restrictions placed on Plaintiff at M.C.C.I. and assist him with the forms to file an Order to Show Cause against M.C.C.I. (*Id.*) After Plaintiff agreed to move forward with the attorney in his criminal case, the attorney failed to provide Plaintiff with the forms and position letters, informing him that his supervisor advised him against doing so for liability reasons. (*Id.*) Plaintiff also sued the "head public defender" from Monmouth County for libel after this individual allegedly wrote letters about Plaintiff that the he knew to be false and sent them to various individuals. (*Id.* at 12.)

After motions were filed in both cases, Plaintiff sought additional time in the law library, which was denied pursuant to M.C.C.I.'s policies for protective custody inmates, and Plaintiff subsequently missed his filing deadlines, and the cases were dismissed. (*Id.*) In dismissing the cases, the judge stated that Plaintiff had refused to come to court; however, Plaintiff alleges that he was unaware of the court date and that M.C.C.I. never brought him to court or informed him

of the hearing date.  He appears to state in his Amended Complaint that these failures were intentional.  (*See id.*)

Plaintiff also asserts in his Amended Complaint that officials at M.C.C.I. have told him that the United States District Court for the District of New Jersey has issued a warrant and detainer for Plaintiff, precluding him from making bail.  (*Id.* at 12-13.)  The Amended Complaint also alleges that Plaintiff's current assigned counsel has declined to assist him with this matter, that he was denied additional law library time to research this matter on his own behalf, and that the federal detainer remains in place.  (*Id.* at 13.)

With respect to his pending state court criminal matter, Plaintiff alleges in his Amended Complaint that there were 31 DVDs and/or CDs of electronic discovery in the M.C.C.I. law library that he was unable to view.  Although he received transcripts for two of the DVDs, he did not receive access to the remaining DVDs and CDs and alleges that he cannot "provide [his] attorney with the necessary factual information he needs if [Plaintiff] cannot review the evidence against [him]."  (*Id.*)  In denying him access to this electronic discovery, prison officials at M.C.C.I. claimed that they were following prison policy.  (*Id.*)  Plaintiff also alleges that the policies restricting his law library access and his access to his electronic discovery were created and/or approved by both Defendants and are preventing him from assisting his attorney in preparing his defense. (*Id.*)  With respect to the denial of access to this electronic discovery, Plaintiff's Amended Complaint alleges that one of the DVDs that Plaintiff was unable to watch contained a statement from "a major witness" who is now dead, and Plaintiff's attorney no longer has the opportunity to question that witnes about his statement.  (*Id.* at 14.)

As noted above, Plaintiff also alleges that both Defendants created and/or approved a policy or custom denying him private visits with his attorney from approximately September

2014 to September 2015.  (*Id.* at 14-15.)  During this time period, Plaintiff was only permitted to see his attorney in the "Restrictive Cage."  Plaintiff's attorney Robert Gaynor, Esquire, attempted to informally address the matter with prison administration and subsequently wrote to Defendant Nadrowski.  M.C.C.I. allegedly took the position that it would be public visits or nothing.  Although Mr. Gaynor told the state court judge presiding over Plaintiff's criminal matter that he could not adequately represent Plaintiff under these circumstances, the judge also allegedly declined to address this issue.  (*Id.*)  In January 2016, a new attorney, Albert Kapin, Esquire, took over Plaintiff's representation in his criminal case.  (*Id.*)

Under the policy, visits between Plaintiff and his attorney were allowed Mondays through Fridays between 8:30 a.m. and 2 p.m.  (*Id.* at 17.)  This restriction on attorney meetings allegedly applied only to Plaintiff and not to any other inmates at M.C.C.I.  (*Id.*)  Under this policy for attorney visits, Plaintiff's hands were cuffed, his legs were shackled, and a waist chain was placed on his waist and connected to his handcuffs, which prevented Plaintiff from using his hands.  (*Id.*)  Plaintiff remained in full body restraints during his attorney visits and was seated across from his attorney.  He was not permitted to get up from his chair during the visits or approach counsel.  (*Id.*)  Plaintiff alleges that the level of restraint made it impossible for him to physically go through the large volume of discovery materials and evidence with his attorney and prevented him from taking, and going over, his notes with his attorney.  (*Id.* at 18.)  Plaintiff alleges that these restrictions were being used to punish Plaintiff and are not related to institutional security.  (*Id.*)  Plaintiff also notes that he is not subject to these types of restraint when he is transported from M.C.C.I. to the local courthouse or when he meets with his attorney at the courthouse, even though the courthouse is less secure than M.C.C.I.  (*Id.*)

**b.  Procedural History**

8

Plaintiff's initial Complaint and application to proceed *in forma pauperis* ("IFP") was docketed on January 13, 2016.  (ECF No. 1).  On February 1, 2016, before the Court had screened his original Complaint, Plaintiff filed a motion seeking leave to amend his original Complaint and attached a copy of his proposed Amended Complaint.  (ECF No. 2.)  On May 2, 2015, Plaintiff also submitted a motion that is styled as a request for a preliminary injunction/temporary restraining order and seeks expedited resolution of his claims for injunctive relief.  (See ECF No. 6.)  On June 13, 2016, Plaintiff wrote a letter notifying the Court that he had been "moved" from M.C.C.I. to Mercer County Correction Institution.  (See ECF No. 8.) The letter provided no other information.

On June 21, 2016, the Court granted Plaintiff's IFP application and issued an Order to Show Cause ("OTSC"), requiring Plaintiff to explain in writing whether his transfer from Monmouth County Correctional Institution to Mercer County Correctional Institution renders moot his claims for injunctive/declaratory relief.[4]  On June 29, 2016, Plaintiff filed his letter response to the OTSC.[5]  It appears that Plaintiff remains confined at Mercer County Correctional Institution.

## III.   STANDARD OF REVIEW

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*, *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune

---

[4] The Court also found that that Plaintiff was permitted to amend his Complaint as of right, *see* Fed. R. Civ. P. 15(a)(1), and dismissed his motion to amend as moot.

[5] The content of Plaintiff's letter response to the OTSC is discussed in the Analysis section of this Opinion.

from such relief.  *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts are required to liberally construe pleadings drafted by *pro se* parties.  *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers."  *Id.*  Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted.  *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).  To do

so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Furthermore, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.' *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV. ANALYSIS

Plaintiff has sued Warden Nadrowski and Sheriff Golden for their alleged roles in creating and approving policies at M.C.C.I. that allegedly violated his constitutional rights.[6] The

---

[6]     It is not entirely clear whether Plaintiff has sued Defendants in their personal capacities or their official capacities or both. "Personal-capacity damage suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *see Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"); *Sutton v. City of Phila.*, 21 F. Supp.3d 474, 493 (E.D. Pa. 2014) ("A suit against an individual in his or her official capacity 'is not a suit against the official, but rather a suit against the official's office.'" (citing *Kentucky*, 473 U.S. at 165); *Duffy v. Cnty. of Bucks*, 7 F. Supp.2d 569, 578 (E.D. Pa. 1998) (noting that claims against county correctional officers in their official capacities were effectively claims against the county). There are "two general ways" in which a supervisor-defendant, such as Defendants Nadrowski and Golden, may be liable in their personal capacity for constitutional violations: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. *See Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015). As noted above, Plaintiff appears to sue Defendants for their respective roles as policymakers. Plaintiff has not named Monmouth County as a Defendant. It is well-settled, however, that a municipality may be held liable under § 1983 if its official policy or custom causes a constitutional injury. *See Monell v.*

Court construes Plaintiff's Amended Complaint to allege the following violations of his constitutional rights under 42 U.S.C. § 1983: (1) a Fourteenth Amendment challenge to the conditions of his confinement; (2) a Fourth Amendment challenge to the searches of his cell and person; (3) an Equal Protection claim; (4) a Sixth Amendment claim of interference with his right to meet with his criminal counsel and prepare his defense in his criminal case; and (5) First and Fourteenth Amendment claims of denial of access to the courts.[7]  The Court considers each type of claim separately.

### a.  Claims related to Plaintiff's Conditions of Confinement

Constitutional challenges to the conditions of pretrial confinement are analyzed under the Fourteenth Amendment's Due Process Clause.  *See Hubbard v. Taylor*, 399 F.3d 150, 158 n. 13 (3d Cir. 2005).  In *Bell v. Wolfish*, the Supreme Court held that because a pretrial detainee has not been found guilty of any crime, he may only be detained "to ensure his presence at trial and may [be] subject[ed] to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment." 441 U.S. 520, 536–37 (1979).  If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, such as ensuring security and order at the institution, it does not, without

---

*New York Department of Social Services*, 463 U .S. 658, 694 (1978).  To the extent, Plaintiff seeks to bring a *Monell* claim against Monmouth County, he must file a Second Amended Complaint that names Monmouth County as a defendant and provides facts to support a *Monell* claim.

[7]      Plaintiff's Amended Complaint also mentions the due process clause of the Fifth Amendment.  The due process clause under the Fifth Amendment "only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard*, 324 F. App'x. 186, 189 (3d Cir. 2011) (citing *Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir. 1997)); *see also Beahm v. Burke*, 982 F.Supp.2d 451, 458 (E.D. Pa. 2013). Defendants are state employees, not federal officials. As such, the Court does not construe Plaintiff to raise any claims under the Fifth Amendment.

more, amount to punishment. *Id.* at 539. In *Union County Jail Inmates v. Di Buono*, 713 F.2d 984 (3d Cir. 1983), the Third Circuit "distilled the Supreme Court's teachings in *Bell* into a two-part test: '[the court] must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.'" *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (citing *id.* at 992).

Conditions of confinement claims by pretrial detainees must be assessed in light of the totality of the circumstances existing within the institution in order to determine whether the challenged condition amounts to a genuine privation. *See Hubbard*, 538 F.3d at 233-35 (3d Cir. 2008) (explaining that in conducting this analysis, courts "'do not assay separately each of the institutional practices, but [instead] look to the totality of the conditions'") (citations omitted); *see also id.* at 233 (citing *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996) ("[i]n evaluating the conditions, the court must look to a number of factors, including the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise")).

More recently, in *Southerland v. Cty. of Hudson*, 523 F. App'x 919, 921 (3d Cir. 2013), the Third Circuit determined that a pretrial detainee's allegations that he was confined to small cell with another pretrial detainee for 23 hours per day for 5 days out of week, and for 32 hours over course of remaining two days of week, even though he received no prior misbehavior report, disciplinary infraction, or any other documentation justifying his assignment to those conditions, were sufficient to state plausible claim that his pretrial detention conditions violated Due Process Clause. *See id.* (finding that the District Court erred by *sua sponte* dismissing the claim).

13

Here, Plaintiff has alleged in his Amended Complaint that he was confined alone in a small cell 23 hours a day seven days a week for 1222 days, despite having committed no disciplinary or other infractions.  He further alleges facts suggesting that the Cage to which he was confined for exercise/recreation is too small to permit meaningful exercise, and that he was not permitted to exercise outside at all, even though there were secure outside areas.  In addition, Plaintiff also alleges that his cell was frigid, under constant illumination, and extremely noisy. (ECF No. 2-4, Am. Compl., Attachment E, at pages 1-2.)  The Court finds that Plaintiff has pleaded sufficient facts to allow his Fourteenth Amendment conditions of confinement claim to proceed against Defendants, who allegedly created and/or approved the policies related to the confinement of protective custody inmates.[8]

### b. Policies Directing Additional Searches of Plaintiff's Cell and Person

Plaintiff next alleges that Defendants created and/or approved a policy authorizing jail staff to perform additional searches of Plaintiff's cell and person.  (*Id.* at page 9.)  Plaintiff alleges that this search policy was instituted to harass him and further alleges that he has not had any problems with staff members that precipitated the additional searches.  (*Id.*)

The Court construes Plaintiff to allege that the searches in question infringe on his Fourth Amendment right to be free of unreasonable searches and seizures.  It is important to note that

---

[8]     The Court notes that Plaintiff's allegations that he was not provided a pillow or extra jumpsuits would not state a claim for relief under the Fourteenth Amendment and would not alter the Court's analysis as to whether the conditions of Plaintiff's confinement violate the Fourteenth Amendment under the totality of the circumstances.  In light of the Third Circuit's "totality of the circumstances" approach, however, the Court declines to assess each of Plaintiff's allegations individually.  *See Hubbard*, 538 F.3d at 235 declining "approach of 'assay[ing] separately'" the constitutionality of floor mattresses, and instead consider them as part of the "totality of the circumstances within [the] institution.'").

although pretrial detainees are entitled to some protection under the Fourth Amendment, they do not have an expectation of privacy equal to an individual in society generally.  In *Hudson v. Palmer*, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose.  *Id.* at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." *Id.* at 530. The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.  *Id.* at 527–28 (footnotes, citations and internal quotation marks omitted).

The Supreme Court has reached the same conclusion with respect to pretrial detainees.  *See Bell*, 441 U.S. at 558–560 (finding that body cavity searches of pretrial detainees do not violate the Fourth Amendment); *see also Lorenzo v. Jones*, No. CIV.A. 11-1566 ES, 2011 WL 4345454, at *4 (D.N.J. Sept. 9, 2011) (explaining same).

In *Bell v. Wolfish*, the Supreme Court held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of the pretrial detainee and the integrity of the pretrial detainee's body.  In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *See Bell*, 441 U.S. at 559; *see also Brown v. Blaine*, 185 F. App'x. 166 (3d Cir. 2006) (three strip searches alleged to be unsanitary, demeaning and humiliating held to be constitutional).

15

Here, Plaintiff has alleged that the searches of his cell and person were conducted for the purpose of harassment.  Pretrial detainees, like convicted prisoners, are protected against calculated harassment.  *See Williams v. Southwoods State Prison*, No. CIV A 07-2337 JBS, 2007 WL 1752088, at *3 (D.N.J. June 13, 2007) (citing *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)). As explained by the Supreme Court, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." *Id.* at 528.  Thus, cell searches conducted as "calculated harassment unrelated to prison needs" may violate the Constitution.  *Hudson*, 468 U.S. at 530; *see also Prisoners' Legal Ass'n v. Roberson*, 822 F.  Supp. 185, 189 (D.N.J. 1993). Numerous searches conducted within a short period of time may suggest intent to harass an inmate.  *Williams*, 2007 WL 1752088, at *3 (citing *Scher v. Engelke*, 943 F.2d 921, 923-24 (8th Cir.1991) (finding that ten searches of an inmate's cell within a nineteen-day period constituted "cruel and unusual punishment"), *cert. denied*, 503 U.S. 952 (1992)); *see also Thorpe v. Little*, 804 F. Supp. 2d 174, 186 (D. Del. 2011) (permitting allegations of continuous or repeated harassing searches to survive *sua sponte* screening).

Here, Plaintiff's Amended Complaint does not appear to be complaining about routine shakedowns or cell searches, which generally are permissible given the legitimate interest in maintaining security in a corrections facility.  Instead, Plaintiff appears to allege that he was subjected to harassing and repeated cell searches and searches of his person, which were performed in addition to the routine searches that are performed to maintain security.  Liberally construing the complaint, Plaintiff's claim is sufficient to survive the Court's initial screening.

### c.  Policies Denying Plaintiff Access to his Attorney

Several of the allegations in Plaintiff's Amended Complaint relate to the denial of access to his attorney in his pending criminal case.  "Under the Sixth Amendment, a pretrial detainee

16

has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, No. CIV.A. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).  With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation ... are invalid.'" *Id.* at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)).  Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" *Id.* at 187 (quoting *Bell v. Wolfish*, 441 U.S. 520 (1979)). A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

Notably, unlike a First Amendment access to the courts claim, which is discussed below, a claim of unreasonable interference with Sixth Amendment right to counsel does not require a showing of actual injury.  *See Benjamin*, 264 F.3d at 185 (pretrial detainee has standing to assert unreasonable interference with Sixth Amendment right even if the interference did not result in "actual injury").  Although the Third Circuit has not ruled on this issue in a published opinion, the court in *Prater v. City of Philadelphia*, 542 F. App'x 135, 139, n.5 (3d Cir. 2013), noted that district court had failed to address prisoner's Sixth Amendment interference with right to counsel claim and disagreed with district court's implicit conclusion that the claim required a showing of actual injury (affirming in part on alternate basis) (citing *Benjamin*, 264 F.3d at 185).

Here, Plaintiff has alleged that Defendants issued policies denying him private access to his attorney for a one-year period and subsequently required him to meet with his attorney during limited hours and while wearing full body restraints, which allegedly prevented Plaintiff from reviewing the evidence and transcripts in his case.[9]  (ECF No. 2-4, Am. Compl. at Attachment E, pages 14-18.)  The Court finds that the alleged violations of Plaintiff's Sixth Amendment right to counsel are sufficient to survive screening and shall not be dismissed at this time.

### d.  Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010).  Plaintiff also appears to state an equal protection claim based on the "class of one" theory of liability outlined by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). In *Olech*, the Court permitted a plaintiff to proceed on a class of one theory when the plaintiff alleged that she had been "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Id.* at 564; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).  Here, Plaintiff alleges that Defendants created and/or approved targeted policies for searching his cell and person and for attorney visits.  He further alleges that these policies were created specifically for him and were more restrictive than the policies in effect for other similarly situated inmates in protective custody.  He also appears

---

[9]     Plaintiff also alleges that his requests to speak to his attorney by phone take two weeks to be processed and that phone calls with his attorney must occur in the Restrictive Cage, which is not private.

to allege facts suggesting that there is no rational basis for the difference in treatment.  Taking these allegations as true, the Court will permit Plaintiff's equal protection claim to proceed at this time.

### e.  Law Library Access and Access to the Courts

Plaintiff also alleges that he was denied law library access and access to the courts with respect to (1) his pending criminal matter, (2) his divorce in 2013, (3) two civil suits filed by Plaintiff in 2015; and (4) a federal detainer that remains in effect.  (ECF No. 2-4, Am. Compl. at Attachment E, pages 10-14.)  Prisoners must be allowed "adequate, effective and meaningful" access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give convicted inmates access to law libraries or direct legal assistance).  A pretrial detainee's constitutional right of access to the courts is embodied in the First and Fourteenth Amendments. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

In *Bounds v. Smith*, *supra*, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." With respect to convicted prisoners, "[t]he tools [that *Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal

charges." [10]  *Hargis v. Atl. Cty. Justice Facility*, No. CIV.A.10-1006(JBS), 2010 WL 1999303, at

*6 (D.N.J. May 18, 2010) (citing *May v. Sheahan*, 226 F.3d 876, 883–84 (7th Cir.2000);

*Caldwell v. Hall*, 2000 WL 343229 (E .D. Pa. March 31, 2000)).

 "[A] prisoner alleging a violation of his right of access must show that prison officials

caused him past or imminent 'actual injury' by hindering his efforts to pursue such a claim."

*Banks v. Fraiser*, No. CIV A 06-4152 FLW, 2007 WL 38909, at *4 (D.N.J. Jan. 4, 2007) (citing

*Lewis v. Casey*, 518 U.S. 343 (1996).  "Where prisoners assert that defendants' actions have

inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an

'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying

claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost

claim other than in the present denial of access suit."  *Monroe*, 536 F.3d at 205-06 (citing

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Thus, as explained by the Third Circuit,

prisoners bringing access to the court claims "must satisfy certain pleading requirements: The

complaint must describe the underlying arguable claim well enough to show that it is "more than

mere hope," and it must describe the "lost remedy." *Id.* (citing *Christopher* 536 U.S. at 416–17);

*see also Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (A plaintiff does not establish a

constitutional violation when he establishes only that he had a "mere hope" that he would prevail

---

[10] The Third Circuit has held that a pretrial detainee's access to court appointed counsel
typically satisfies his right to meaningful access to the courts.  *See Peterkin v. Jeffes*, 855 F.2d
1021, 1042 (3d Cir. 1988) (construing "*Bounds* to hold that the provision of lawyers is one
means by which a state may provide prisoners with meaningful access to courts"); *see also
Bourdon v. Loughren*, 386 F.3d 88 (2d Cir. 2004) (appointment of counsel can be a valid means
of fully satisfying constitutional obligation to provide prisoners, including pretrial detainees,
with access to the courts).  Here, however, Plaintiff also alleges violations of his Sixth
Amendment right to counsel and alleges that the Defendants created policies that denied him
adequate access to his attorney.  Under the facts alleged in the Amended Complaint, the Court
cannot find at this time that the appointment of counsel would satisfy Plaintiff's right to
meaningful access to the Courts.

on the underlying claim.).  Furthermore, conclusory allegations that an inmate suffered prejudice will not support an access-to-courts claim.  *Duran v. Merline*, 923 F. Supp. 2d 702, 722-23 (D.N.J. 2013) (citing *Arce v. Walker*, 58 F.Supp.2d 39, 44 (W.D.N.Y.1999) (internal citations omitted)).  As such, an access to the courts claim will be subject to dismissal where "the Court [is] left to guess whether the suit had any merit."  *Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014).

With respect to his pending criminal case, Plaintiff alleges that Defendants have (1) denied him access to the law library to research legal issues and (2) denied him access to electronic discovery and other evidence that he needs in order to prepare his criminal defense. (ECF No. 2-4, Am. Compl., Attachment E, at pages 12-13.)  Because Plaintiff has alleged that he was denied adequate access to his counsel, the Court construes him to allege that he is, in essence, proceeding *pro se* in his criminal case.  With respect to the denial of access to electronic discovery, Plaintiff's Amended Complaint alleges that one of the DVDs that Plaintiff was unable to watch contained a statement from "a major witness" who is now dead, and Plaintiff's attorney no longer has the opportunity to question the witness about his statement.  (*Id.* at 14.)  The Court finds that Plaintiff has provided sufficient facts to suggest that the denial of access to the evidence in his criminal case has caused him imminent actual injury and will permit his access to the courts claim with respect to his pending criminal case to proceed at this time.

Plaintiff's Amended Complaint also alleges that he was denied access to the law library to research legal issues related to (1) his 2013 divorce/custody proceeding, (2) two 2015 civil suits, and (3) a federal detainer against him.  The Amended Complaint also alleges that prison officials at M.C.C.I. failed to take him to a 2013 divorce/custody hearing and to two hearings in the 2015 civil cases.   As alleged, Plaintiff lost custody of his children in his 2013 divorce and

the two 2015 civil suits as a result.  In addition, Plaintiff alleges that the federal detainer is still in

effect, and may prevent him from being released from jail if he is provided bail in his state law

criminal matter.

      With the possible exception of the federal detainer, Plaintiff's "lost" cases do not clearly

relate to a conviction or to his conditions of confinement.  *See Lewis v. Casey*, 518 U.S. at 355.

The Third Circuit has not yet issued a published decision addressing whether the limitations on

the types of predicate cases that can support an access to the court claim apply to pretrial

detainees.[11]  In an unpublished decision, however, the Third Circuit has suggested that the

limitation would <u>not apply</u> to situations where prison officials intentionally impede and interfere

with a prisoner's legal actions.  *See Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014) (citing

*Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010)).  ("[A]lthough *Casey* 'limits the

types of cases in which the prison must provide affirmative assistance, it does not give free reign

to prison authorities to interfere with and impede a prisoner's pursuit of other legal actions.'")

The Court in *Sanders* further noted that where a plaintiff is "a pretrial detainee at the time in

question, *Casey's* limitations on the types of predicate cases that can support an access-to-courts

claim do not plainly apply." *Id.* (citing *Casey*, 518 U.S. at 355 (impairment of litigation is

consequence of conviction and incarceration).  The Court clarified, however, that "to sufficiently

plead an access-to-courts claim, even a non-prisoner must plead that 'official acts ... may

allegedly have caused the loss ... of a meritorious case.'"  *Id.* (citing *Christopher v. Harbury*, 536

U.S. 403, 416 (2002)).

---

[11]    For convicted inmates, the impairment of any other litigating capacity is simply one of
the incidental (and perfectly constitutional) consequences of conviction and incarceration. *See
Lewis*, 518 U.S. at 355; *see also Tinsley v. Del Rosso*, No. CIV.A. 08-1251(RMB), 2008 WL
2236598, at *3 (D.N.J. May 30, 2008) (explaining same).

With respect to his 2013 divorce/custody proceeding and his 2015 civil suits, Plaintiff has not provided sufficient facts "to show that his lost or rejected legal claim[s] [were] non-frivolous or arguable."  *Saunders*, 546 F. App'x at 72.  As such, the Court will dismiss these claims without prejudice.  Although Plaintiff also provides some facts in his Amended Complaint suggesting that unidentified officials at M.C.C.I. intentionally did not bring him to court for his court hearings, he has not identified the prison officials who failed to bring him to court or pleaded facts showing how <u>Defendants Nadrowski and Golden were involved</u> in these failures.[12] The Court also finds that Plaintiff's allegation that the federal detainer could prevent him from being released from jail if he were to be afforded bail is too speculative to meet the imminent actual injury requirement for an access to the courts claim.  For these reasons, the Court will dismiss without prejudice Plaintiff's access to the court claims that do <u>not</u> relate to his pending criminal matter and will grant Plaintiff leave to file a second amended complaint to the extent he can cure these deficiencies in these claims.

## f.  Claims for Injunctive Relief

The Court next addresses whether Plaintiff's claims for injunctive relief (and his motion for preliminary injunctive relief (ECF No. 6)) are moot due to his transfer from M.C.C.I. to Mercer County Correctional Institution.  Generally, requests for injunctive relief for claims involving adverse prison administrative actions, regardless of their possible merits, become moot

---

[12]      Section 1983 does not support a claim based on *respondeat superior. See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs.  *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *see also In re Bayside Prison Litig.*, No. 97–5127, 2007 WL 327519, at *5 (D.N.J. Jan. 30, 2007).  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir.1995); *Jackson v. Camden Cnty. Corr. Facility*, No. 12–7538, 2013 WL 1844636, at *3 n. 1 (D.N.J. Apr.29, 2013).

once the prisoner is no longer subject to the challenged action.  "Mootness questions often arise in cases involving inmate challenges to prison policies or conditions, and courts, including our own, have held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives."  *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 206–07 (3d Cir. 1993) (vacating injunctive relief ordered by district court in favor of inmate in Delaware's Maximum Security Unit who had been released from the unit five months prior to trial; after the date of the inmate's release from the maximum security unit, "the district court could not provide [him] with meaningful relief by entering an injunctive order respecting the [maximum security unit] in which [he] no longer was incarcerated");*Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981) (prisoner's transfer from prison mooted claim for injunctive and declaratory relief with respect to prison conditions, but not claim for damages)*; Prater v. City of Philadelphia*, 542 F. App'x 135, 138 (3d Cir. 2013) ("to the extent that Prater's complaint seeks prospective injunctive relief, the Sixth Amendment claim is moot, as Prater is no longer housed at CFCF." (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

The "capable of repetition" doctrine provides a narrow exception to the mootness principle.  As explained by the Third Circuit in *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993) The "capable of repetition" doctrine . . . is limited to cases presenting two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

In response to the Court's Order to Show Cause, Plaintiff contends that the Monmouth County Sheriff's Office – Corrections Division has told Plaintiff that his transfer to Mercer County Correctional Institution is "temporary" and that he will be returned to M.C.C.I. as soon as a trial date is set.  Plaintiff does not provide the trial date.  Plaintiff further contends that the Sheriff's Office informed him that, upon his return, he will be held under the same conditions of confinement at M.C.C.I.   (*See* ECF No. 10, Pl. Reponse to OTSC at 3.)  As such, Plaintiff argues that his claims for injunctive relief are not moot because he will eventually be returned to M.C.C.I. and will allegedly be subject to the same conditions about which he complains in his Amended Complaint.   Having considered Plaintiff's response, the Court finds that Plaintiff has not shown a reasonable likelihood that he will be subject to the same action again.  The Court will therefore dismiss without prejudice Plaintiff's claims for injunctive relief at this time.  To the extent Plaintiff is transferred back to M.C.C.I. during the pendency of this litigation and faces the same conditions about which he complains in his Amended Complaint, he may seek to amend his Complaint to add claims for injunctive relief.  The Court also denies Plaintiff request for preliminary injunctive relief (ECF No. 6) on the same basis.  The Court next addresses Plaintiff's remaining damages claims.

**g.  Claims for Damages**

In addition to injunctive relief, Plaintiff seeks "compensatory damages in the amount of $30,000 for each specific constitutional violation against each Defendant, jointly and severally." (ECF No. 2-4, Am. Compl. at 29.) He also seeks punitive damages in the amount of $100,000 against each Defendant.  (*Id.*)

It is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory.  *See Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (citing

*Carey v. Piphus*, 435 U.S. 247, 255 (1978)).  In other words, "damages are available under [§

1983] for actions 'found ... to have been violative of ... constitutional rights and to have caused

compensable injury....' " *Id.* (citing *Carey*, 435 U.S. at 255 (emphasis omitted in original).

In *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986), the Supreme

Court held that

> substantial damages may only be awarded to compensate for actual
> injury suffered as a result of the violation of a constitutional right.
> Indeed, in that case the Court overturned a substantial jury verdict
> for the plaintiff because the jury had been erroneously instructed to
> place their own subjective value on the constitutional rights
> transgressed. *See also Carey*, 435 U.S. at 248, 98 S.Ct. 1042
> (absent proof of actual injury, compensatory damages may not be
> awarded); *Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205,
> 1214–15 (10th Cir.1999) (reversing an award of damages for a free
> exercise claim where the district court calculated damages based
> on an abstract, per diem calculation rather than on evidence of
> actual mental or emotional harm suffered by prisoner). "[T]he
> abstract value of a constitutional right," the Supreme Court has
> stated, "may not form the basis for § 1983 damages." *Stachura*,
> 477 U.S. at 308, 106 S.Ct. 2537.

*Allah v. Al-Hafeez*, 226 F.3d 247, 250–51 (3d Cir. 2000) (finding no construction of Plaintiff's

complaint that would save his claims for compensatory damages from the bar imposed by §

1997e(e).)  The Third Circuit went on to explain that although Plaintiff sought "substantial

damages for the harm he suffered as a result of defendants' alleged violation of his First

Amendment right to free exercise of religion . . . the only actual injury that could form the basis

for the award he seeks would be mental and/or emotional injury."  *Id.* at 251.  "Under §

1997e(e), however, in order to bring a claim for mental or emotional injury suffered while in

custody, a prisoner must allege physical injury, an allegation that [Plaintiff] undisputedly does

not make."  *Id.* (finding that plaintiff's claims for compensatory damages were barred by §

1997e(e) and were appropriately dismissed).

With respect to the claims that the Court has proceeded past screening, Plaintiff has not met the actual injury requirement under § 1997e(e).[13]  As such, the Court will dismiss without prejudice Plaintiff's claims for compensatory damages.

As noted above, Plaintiff has also sought punitive damages, and § 1997e(e) does not preclude plaintiffs from seeking punitive damages on claim brought pursuant to §1983; it likewise does not bar claims for nominal damages. *See Michel v. Levinson*, 437 F. App'x 160, 164 (3d Cir. 2011) (citing *Allah*, 226 F.3d at 251).  As explained by the Third Circuit in *Allah*:

> [O]ur determination that § 1997e(e) bars Allah's claims for compensatory damages does not mean that the section bars all of his claims for damages. On the contrary, the Supreme Court recognized in both *Carey* and *Stachura* that certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages. *See Stachura*, 477 U.S. at 308 n. 11, 106 S.Ct. 2537 ("[N]ominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."); *Carey*, 435 U.S. at 266, 98 S.Ct. 1042 (approving recovery of nominal damages without proof of actual injury). After *Carey*, federal courts have consistently awarded nominal damages for violations of First Amendment rights. *See, e.g.*, *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 431 (2d Cir.1995) (awarding nominal damages for Fair Housing Act and conspiracy to violate First Amendment rights claims); *Wolfel v. Bates*, 707 F.2d 932, 934 (6th Cir.1983) (per curiam) (affirming award of nominal damages for violation of prisoner's First Amendment rights).

*Allah*, 226 F.3d at 251; see also *Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001) (explaining same); *Prater v. City of Philadelphia*, No. CIV.A. 11-1618, 2015 WL 3456659, at *5 (E.D. Pa.

---

[13]     Plaintiff's claims for compensatory damages appear to be based on the abstract value of the alleged violations of his constitutional rights and/or alleged emotional injuries. Plaintiff's only allegation that mentions physical injury relates to the conditions of his confinement, where he states that the 24-hour illumination of his cell has negatively affected Plaintiff's sleep and caused him physical and mental problems.  (ECF No. 2-4, Am. Compl. at 3-4.)  This allegation is conclusory at best and fails to provide sufficient facts describing the nature of the alleged physical injury.

June 1, 2015) (finding that Plaintiff could seek nominal and punitive damages solely on the basis

of a constitutional violation and need not be premised on an injury flowing from that violation)

(citing *Allah*, 226 F.3d at 251-252).  The Third Circuit has held that nominal damages need not

be pled.  *See Allah*, 226 F.3d at 251; *Michel*, 437 F. App'x at 164.  As such, the Court will permit

the claims described in this Opinion to proceed on the basis of nominal and punitive damages

only.

### h.  New Allegations in his May 3, 2016 Letter

On May 3, 2016, Plaintiff wrote to the Court to advise that jail officials (other than the

named Defendants) were allegedly threatening him in retaliation for his filing of the instant

action.  (*See* ECF No. 5.)  The Court finds these allegations troubling; however, to seek civil

redress for these new instances of purported misconduct, Plaintiff must seek leave to amend his

pleading as prescribed by Federal Rule of Civil Procedure 15(a) and Local Civil Rule 7.1(f).  *See*

*e.g., Bell v. City of Philadelphia*, 275 F. App'x. 157, 160 (3d Cir. 2008) ("A plaintiff may not

amend his complaint through arguments in his brief ....")(citations omitted); *see also Duran v.*

*Merline*, 923 F. Supp. 2d 702, 723 (D.N.J. 2013) (explaining same.)  The Court will grant

Plaintiff leave to file a Second Amended Complaint that adds claims related to these new

allegations.

### V.    CONCLUSION

For the reasons expressed in this Opinion, the Complaint is proceeded in part and

dismissed in part pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B).

Plaintiff's access to the courts claims related to (1) his 2013 divorce/custody proceeding, (2) his

2015 civil cases, and (3) the federal detainer are dismissed without prejudice for the reasons

stated in this Opinion.  Plaintiff's claims for injunctive relief are dismissed without prejudice due

to his transfer from M.C.C.I.  Plaintiff's separate motion for a preliminary injunction/temporary restraining Order (ECF No. 6) is denied without prejudice on the same basis.  To the extent Plaintiff is transferred back to M.C.C.I. during the pendency of this litigation and subjected to the conditions described in his Amended Complaint, he may filed second amended complaint seeking injunctive relief and, if necessary, renew his motion for preliminary injunction/temporary restraining order.  His claims for compensatory damages are dismissed without prejudice for failure to meet the actual injury requirement as required by § 1997e(e).[14] The remaining claims, as construed by the Court in this Opinion, shall proceed at this time for nominal and punitive damages only.  An appropriate Order follows.


/s/         Freda L. Wolfson
Freda L. Wolfson
United States District Judge


Date: December 8, 2016

---

[14]     To the extent Plaintiff can provide facts that would cure the deficiencies in his claims, Plaintiff may file a Second Amended Complaint within 30 days.  At that time, Plaintiff may also amend his Complaint to include the allegations of misconduct referred to in his May 3, 2016 letter.